UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY RODRIGUEZ, Relator,<br>Plaintiff,<br>v.<br>COASTAL CLINIC & MANAGEMENT SERVICES, INC., et al.,<br>Defendants,<br>and<br>UNITED STATES OF AMERICA,<br>Real Party in Interest. | Case No.: 25-cv-01080-AJB-BLM<br>**ORDER GRANTING MOTION TO INTERVENE AND MOTION TO DISMISS**<br>**(Doc. No. 27)** |

Before the Court is a motion to intervene and dismiss the instant action filed by United State of America ("the Government") pursuant to 31 U.S.C. §§ 3730(c)(3) and 3730(c)(2)(A). (Doc. No. 27.) Plaintiff-Relator Kimberly Rodriguez ("Relator") opposes. (Doc. No. 29.) Pursuant to 31 U.S.C. § 3730(c)(2)(A), the Court held a hearing on the motions on October 15, 2026. For the reasons set forth below, the Court **GRANTS** the Government's motion to intervene and **DISMISSES** the action pursuant to the Government's notice of voluntary dismissal.

## I. BACKGROUND

On April 29, 2025, Relator initiated the instant action against Defendant Coastal Clinical & Management Services, Inc. ("CCMS"). (Doc. No. 1, Complaint ("Compl.").) Relator asserts she was employed by CCMS as a caretaker responsible for assisting with the basic needs of detained children at the U.S. Customs and Border Protection ("CBP") facility in Chula Vista, California, from 2023 to 2024. (*Id.* at 2–3.) According to Relator, CCMS is a third-party contractor hired by the Government to provide staffing and support services, including caretaking, at CBP facilities. (*Id.* at 3.) The Government contracted with CCMS to provide essential services such as meal preparation and medical care for detainees in exchange for over 100 million dollars. (*Id.*) However, Relator alleges that CCMS "knowingly submitted or caused to be submitted false claims to the Government by billing for meal preparation and medical services that were not provided, were substandard, or did not meet contractual standards. (*Id.* at 5.) Specifically, Relator alleges that she "observed that the meals provided were consistently substandard, inadequate, or nonexistent" and that "detainees bec[a]m[e] ill after consuming the provided food and water," due to the "items [being] often stored improperly, resulting in moldy or spoiled food being served." (*Id.* at 3–4.)

On January 20, 2026, after investigating Relator's claims, the Government declined to intervene (Doc. No. 6), and the Court ordered the complaint be unsealed and served upon CCMS.[1] (Doc. No. 7.) A summons was issued on January 27, 2026. (Doc. No. 8.) After more than 90 days elapsed since the summons was issued and Relator had failed to submit proof of service or request an extension of time to serve CCMS, the Court issued an Order to Show Cause ("OSC") why this case should not be dismissed for failure to timely effect service pursuant to Rule 4(m) and Civil Local Rule 4.1.b. (Doc. No. 14.) After multiple

---

[1] The action initially named Loyal Source Government Services as a defendant as well as CCMS. (*See generally* Compl.) However, the Court dismissed Defendant Loyal Sources Government Services upon the parties' joint motion. (*See* Doc. Nos. 12; 13.)

responses from Relator attempting to address the service issue (Doc. Nos. 16; 17; 18), the Court discharged the OSC, noting that Relator's responses had failed to address good cause for the untimeliness in service (Doc. No. 19).

Specially appearing, CCMS then filed an ex parte seeking the Court either dismiss the action for failure to comply with the order to show cause, issue a new order to show cause, or extend the time to file a responsive pleading based on Plaintiff Kimberly Rodriguez's untimely and allegedly insufficient service. (Doc. No. 20.) The Court denied in part CCMS's motion, finding that the arguments raised were more appropriately resolved on a fully briefed motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (Doc. No. 23.) However, the Court granted CCMS an extension of 21 days to file a response to the complaint. (*Id.*)

On July 16, 2026, the Government filed the instant motion seeking to intervene and dismiss the action. (Doc. No. 27.) Relator filed an opposition (Doc. No. 29), to which the Government replied (Doc. No. 33). CCMS has not filed a responsive pleading, and its deadline to do so has been stayed, at CCMS's request (*see* Doc. No. 30), until resolution of the pending motion. (Doc. No. 31.)

The Court ordered the Government to file a supplemental brief addressing the inadequacies identified with its motion to intervene. (Doc. No. 34.) The Government timely filed a supplemental brief. (Doc. No. 37.) Relator did not file a supplemental response. On October 15, 2026, the Court held a hearing on both motions. (Doc. No. 38.)

## II. MOTION TO INTERVENE

First, the Government seeks to intervene in the instant action pursuant to 31 U.S.C. § 3730(c)(3) of the False Claims Act. (Doc. No. 27 at 5–6.)

"The False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023). "A private person, known as a *qui tam* relator, may bring a civil action under the FCA in the name of the U.S. government." *United States ex rel. Relator, LLC v. Erskine*,

182 F.4th 785, 791 (9th Cir. 2026) (quoting *United States ex rel. Silbersher v. Allergan, Inc.*, 46 F.4th 991, 994 (9th Cir. 2022)); *see* 31 U.S.C. § 3730(b)(1). "When a relator files a complaint, the Government gets an initial opportunity to intervene in the case." *Polansky*, 599 U.S. at 423; *see* 31 U.S.C. § 3730(b)(2). Because "[t]he Government . . . is a 'real party in interest' in a *qui tam* action[,] . . . the Government can intervene after the seal period ends, so long as it shows good cause to do so." *Polansky*, 599 U.S. at 425–26; *see* 31 U.S.C. § 3730(c)(3).

In its motion, the Government argues that it "has good cause to intervene because it seeks to dismiss Relator's Complaint," which it asserts the Supreme Court has affirmed is a legally sufficient reason to intervene. (Doc. No. 27 at 6 (citing first *Polansky*, 599 U.S. at 429 n.2; then *United States ex rel. Carver v. Physicians Pain Specialists of Alabama, P.C.*, No. 22-13608, 2023 WL 4853328, at *6 n.4 (11th Cir. July 31, 2023)).) With regard to seeking dismissal,[2] the Government states that, "after investigating Relator's claims, the United States has weighed the costs of litigating this matter against the likelihood of success and determined that dismissal is commensurate with the public interest." (Doc. No. 27 at 7.) Specifically, the Government states it "has concluded that the anticipated discovery and litigation obligations associated with the continued litigation of this case will impose a substantial and undue burden on the U.S. Department of Homeland Security and the U.S. Department of Justice." (*Id.*) In its supplemental brief, the Government clarifies that, "[c]ontrary to the Complaint, CCMS did not contract with the government to provide food." (Doc. No. 37 at 3.) "Rather, CCMS contracted to provide childcare to detainees." (*Id.*) Thus, "[b]ecause CCMS did not submit claims for food, Relator's allegation that CCMS presented false claims by failing to provide food will fail." (*Id.*)

---

[2] Because the Government's justification to intervene is based on why it seeks to dismiss the action, it is necessary for the Court to dive into the Government's rationale for dismissal in order to analyze whether the Government has good cause to intervene. For clarity, however, due to the procedural posture of the case, the Government would not need to include its rationale for dismissal in order to voluntarily dismiss pursuant to Rule 41(a)(1)(A)(i) if it was already properly joined in the action.

Relator counters that the Government's "circular" logic is "insufficient." (Doc. No. 29 at 4.) "Allowing intervention on this basis," Relator asserts, "would effectively nullify the relator's statutory right to proceed when the government initially declines." (*Id.*) Additionally, Relator argues that the Government's "position is particularly inconsistent with the current Administration's aggressive, public, and high-priority efforts to ferret out waste, fraud, and abuse in government contracting and federal spending." (*Id.* at 5.) Finally, Relator "strongly disputes" the Government's assessment of the costs of litigation in relation to the gravity of the allegations and vulnerability of the individual's impacted. (*Id.* at 7.)

The Court agrees with Relator that the Government's desire to dismiss the action—without providing more—would be insufficient to demonstrate good cause to intervene.[3] However, in its supplemental response the Government sufficiently explains that Relator's claims will fail on the merits and cites to evidence in the record supporting its representations. (Doc. Nos. 20; 27; 33; 37.) In light of the Government's evidence that there is no likelihood of any recovery, the Court agrees with the Government that any

---

[3] To the extent that the Government is arguing that *Polansky* stands for the proposition that the Government's desire to dismiss is independently sufficient without more (*see* Doc. No. 27 at 6), the Court disagrees. The Government rests the weight of this argument on the following footnote:

> As noted above, post-seal intervention requires a showing of good cause. See *supra*, at 1728–1729. Here, the Third Circuit explained that "showing 'good cause' is neither a burdensome nor unfamiliar obligation," but instead "a uniquely flexible and capacious concept, meaning simply a legally sufficient reason." 17 F.4th at 387 (internal quotation marks omitted). And applying that standard, the Third Circuit found that the Government's request to dismiss the suit—based on its weighing of discovery burdens against likelihood of success—itself established good cause to intervene. See *id.*, at 392–393. Polansky does not challenge that conclusion.

*Polansky*, 599 U.S. at 429 n.2. However, considering how extensive the record supporting good cause for dismissal in *Polansky*, it is easy to see how the same good cause proffered to support dismissal constituted good cause to support intervention. *See Polansky*, 599 U.S. at 438; *Polansky v. Exec. Health Res., Inc.*, 422 F. Supp. 3d 916, 929 (E.D. Pa. 2019), *aff'd in part, vacated in part sub nom. Polansky v. Exec. Health Res. Inc*, 17 F.4th 376 (3d Cir. 2021), *aff'd sub nom. United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023).

burden of continued litigation will outweigh an absent legal benefit.[4] As such, the Court finds that the Government has demonstrated good cause to intervene.

## IV. NOTICE OF VOLUNTARY DISMISSAL

Having properly intervened, the Government next seeks dismissal of the action pursuant to 31 U.S.C. § 3730(c)(2)(A). (Doc. No. 27 at 6–7.)

Under that provision of the FCA, "[t]he Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). "[T]he Government can file a (2)(A) motion to dismiss whenever (whether during the seal period or later) it has intervened." *Polansky*, 599 U.S. at 430. "[W]hen dismissal is sought before an answer is filed . . . , Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role." *Id.* at 437 n.4; *see also id.* at 435–36 (affirming that Rule 41(a) is the appropriate standard for voluntary dismissal of a *qui tam* action by the Government); Fed. R. Civ. P. 41(a)(1)(A)(i) ("[T]he plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]").

In her initial response, Relator asserted that "the[] circumstances [of this case] would implicate her due process rights under the Fifth Amendment" because "Relator has a protected interest in the action and the statutory share of any recovery." (Doc. No. 29 at 8.) As such, "Relator respectfully requests an in-person hearing (or at minimum full briefing and oral argument) to present arguments and any supporting evidence regarding the viability of the claims and the public interest." (*Id.* at 8–9.)

///

///

---

[4] To be sure, the circumstances alleged in the complaint are tragic. However, Relator's desire to investigate and remedy these alleged wrongs is not legally actionable when Relator has ostensibly sued the wrong entity.

The Court permitted briefing, supplemental briefing, and an in-person hearing for oral arguments. Relator was provided the procedural due process requested.[5] (*See* Doc. No. 38.) Of note, despite being provided the opportunity to file a supplemental response (*see* Doc. No. 34 at 5), Relator declined to do so (*see generally* Docket). Moreover, when questioned at the hearing about whether there were any constitutional concerns implicated by dismissal, Relator stated (through counsel) that she was aware of none. (Doc. No. 38.)

Although Relator believes her case has merit, albeit against a different defendant, that belief does not equate to the "extraordinary circumstances" necessary to defeat the Government's (2)(A) motion to dismiss. *See Polansky*, 599 U.S. at 438. Here, "[t]he Government [has given] good grounds for thinking that this suit would not do what all *qui tam* actions are supposed to do: vindicate the Government's interests." *Id.*; *see also Vanderlan v. United States*, 135 F.4th 257, 268 (5th Cir. 2025) ("Vanderlan's core argument is that the district court erred because he believes his claims have merit. The purpose, however, of a *qui tam* action is to vindicate the government's interests. The government needed only to show that continued litigation would not do so. It did." (cleaned up)); *United States ex rel. Doe v. Credit Suisse AG*, 117 F.4th 155, 162 (4th Cir. 2024) ("Even at the post-answer stage, when a dismissal requires a court order, a district court must think several times over before denying a motion to dismiss. Here, deference owed to the government is even greater because the government moved for dismissal at the pre-answer stage—when no court order is required and when the district court has no adjudicatory role." (cleaned up)). Accordingly, the Court grants the Government's (2)(A) motion to dismiss, over Relator's objection.

---

[5] The Court makes no determination regarding whether the process requested by Relator was required. *See Ryan v. Mansapit-Shimizu*, No. 24-4522, 2025 WL 1752135, at *1 (9th Cir. June 25, 2025), *reh'g denied,* No. 24-4522, 2025 WL 5275099 (9th Cir. Aug. 13, 2025) ("Although the Supreme Court has held that the federal False Claims Act gives the relator himself an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery, it has declined to address whether a relator's interest in such a suit constitutes a protected property interest that triggers due process." (citations omitted) (emphasis in original)).

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** the motion to intervene. Having permitted the Government to intervene, and at the Government's request, the Court **DISMISSES** the action in its entirety **with prejudice** as to the claims brought by Relator and **without prejudice** as to the claims brought by the Government.

**IT IS SO ORDERED.**

Dated: October 16, 2026

Hon. Anthony J. Battaglia
United States District Judge